UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>　　　　　　　　Defendant. | CASE NO. 2:21-cv-01344-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Defendant Zurich American Insurance Company ("Zurich") requests a stay of this insurance declaratory judgment action ("Coverage Dispute") filed by Plaintiff Charter Oak Fire Insurance Company ("Charter Oak") until a related underlying wrongful death lawsuit against their mutual insureds ("Underlying Action") has been resolved. Dkt. 16. Zurich contends the stay is necessary to avoid prejudicing the defenses of their insureds in the Underlying Action as litigating factual issues in the Coverage Dispute could adversely impact those defenses. *Id.* Charter Oak counters that this is a simple contribution and subrogation case and the Court's decision here will not impact on the duty to defend or indemnify parties in the Underlying Action. Dkt. 18, p. 2.

Having considered the motion, response, reply (Dkt. 23), and balance of the record, the undersigned recommends that the motion to stay be granted.

REPORT AND RECOMMENDATION - 1

FACTUAL AND PROCEDURAL BACKGROUND

A.  Underlying Action

The Underlying Action is a wrongful death lawsuit pending in King County Superior Court, *Wiiest v. Tafa*, King County Superior Court No. 19-2-09344-7 SEA, involving the death of Dianne Allard, when she was struck by a car crossing South 188th Street in SeaTac, Washington. The intersection where this occurred is in a construction zone created by the Central Puget Sound Regional Transit Authority ("Sound Transit"). Dkt. 17, Declaration of Jacquelyn A. Beatty, Ex. 1, ¶¶ 3.1, 3.2, ¶ 3.3. The Underlying Action was consolidated with a parallel King County Superior Court case, *Wiiest v. PCL Civil Contractors*, Cause No. 19-2-15791- 7. Dkt. 17, Beatty Declaration, Ex. 2. Plaintiff sued various contractors, including the general subcontractor PCL Civil Contractors, Inc. ("PCL") and electrical subcontractor Elcon Corporation ("Elcon"). *Id.*, Beatty Decl., Ex. 3, ¶¶ 1.2 – 1.7, 3.1 – 3.3, 3.5.

Plaintiff alleges PCL, as general contractor, had a duty to ensure that work was performed in a manner that assured the safety of all persons who entered or were exposed to the construction zone, including maintaining a safe roadway during construction, including functional traffic control lights for vehicles and pedestrians. Dkt. 17, Beatty Decl., Ex. 3, ¶ 3.3, 3.9. Pursuant to its subcontract with PCL, Elcon was responsible for maintaining the existing and permanent pedestrian and vehicle signalization at the intersection where the accident occurred. *Id.*, Ex. 15, p. 8.

Elcon was retained by PCL to install traffic fixtures and wires for the traffic fixtures at the intersection where Ms. Allard's accident occurred, but according to Elcon's counsel, Elcon was not involved with traffic control. Dkt. 20, Declaration of Thomas Nedderman, ¶ 2. In March 2021, Elcon was dismissed without prejudice from the Underlying Action. Dkt. 17, Beatty

REPORT AND RECOMMENDATION - 2

Declaration, Ex. 11. According to Mr. Nedderman, Plaintiff's counsel agreed to dismiss Elcon because "based upon the information currently available to them," Elcon was not liable for the damages alleged in the Underlying Lawsuit. Dkt. 20, ¶ 6.

On April 12, 2021, Charter asked Zurich to re-assume the defense of PCL and Sound Transit. Dkt. 17-1, p. 52. Zurich appointed new defense attorneys and resumed paying defense costs for PCL and Sound Transit no later than May 19, 2021. Dkt. 16, p. 5 n.1.[1]

B.  Zurich

At the time of the accident, PCL was the named insured on a general liability insurance policy issued by Zurich ("Zurich Policy"). Dkt. 17, Beatty Declaration, Ex. 4. The Zurich Policy includes a blanket additional insured endorsement under which Sound Transit is an additional insured. *Id.*, Beatty Declaration, Exs. 5, 6.

C.  Charter Oak

At the time of the accident, Elcon was the named insured on a general liability insurance policy issued by Charter Oak ("Charter Oak Policy"). Dkt. 9 (Amended Complaint) at 4, ¶ 3.10. The Charter Oak Policy includes a blanket additional insured endorsement under which PCL and Sound Transit are additional insureds "to the extent that, the injury or damage is caused by act or omissions of [Elcon]." Dkt. 19, Swedstedt Dec., Ex. 1.

D.  Tender of Defense

When PCL and Sound Transit first tendered the Underlying Action to Zurich, Zurich agreed to defend them. In August 2019, Zurich discovered their additional insured status under the Charter Oak Policy and tendered the defense of PCL and Sound Transit to Charter Oak. Dkt.

---

[1] Zurich points out that, in both is original and amended complaint in this action, Charter Oak erroneously alleges that Charter Oak "has been and defending and continues to defend" PCL and Sound Transit. *See* Dkt. 1, ¶¶ 3.14, 3.19; Dkt. 9, ¶ 3.14.

17, Beatty Declaration, Ex. 7. Approximately four months later, Charter Oak agreed to defend PCL. *Id.*, Beatty Declaration, Ex. 8; Dkt. No. 9 at 4, ¶ 3.12. Approximately nine months later, Charter Oak agreed to defend Sound Transit. *Id.*, Beatty Declaration, Ex. 9; Dkt. No. 9 at 4, ¶ 3.13. Charter Oak reimbursed Zurich in the amount of $89,926.20 for defense expenses it incurred prior to the transfer of defense. *Id.*, Beatty Declaration, Ex. 10.

E.   Coverage Dispute

Charter Oak contends it never had a duty to defend PCL and Sound Transit, and is entitled to reimbursement for all expenses Charter Oak incurred during the period it was defending them in the Underlying Action. Dkt. No. 9 (Amended Complaint) at 11, ¶¶ 4.5, 4.6, 4.7; *id*. at 11-13, ¶¶ 5.5, 5.11, 5.15. Charter Oak alleges there is "an actual and justiciable controversy as to whether the 'bodily injury' alleged in the Underlying Action was caused by acts or omissions of Elcon or its subcontractors." Dkt. 9 at 11, ¶ 4.4.

Charter Oak seeks (1) a determination of the rights and obligations of Charter Oak and Zurich with regard to the claims asserted in the Underlying Action under the Charter Oak Policy and Zurich Policy; (2) a declaration that Charter Oak does not "presently owe a duty to defend" PCL and Sound Transit under the Charter Oak Policy because they to not "qualify as additional insureds" under the Charter Oak Policy; (3) a judgment including an award of unspecified damages for its contribution, subrogation and/or indemnity claims; and (4) interest, attorney fees, and costs. Dkt. 9, p. 9. Charter Oak contends that PCL and Sound Transit are no longer additional insureds under the Charter Oak Policy because it has been established in the Underlying Action that Elcon was not at fault for the accident.

In its answer, and in correspondence to Charter Oak's counsel, Zurich has maintained that the Coverage Dispute should be stayed because litigating the fault of contractor defendants

REPORT AND RECOMMENDATION - 4

1  involved in the Underlying Action risks prejudicing the defense of PCL and Sound Transit. Dkt.
2  10 at 2, ¶ 2.4; *id*. at 7 (affirmative defense no. 4); Dkt. 17, Beatty Declaration, Ex. 14.
3        The Coverage Dispute was filed five months ago. On February 1, 2022, the Court set
4  pretrial deadlines (including discovery and dispositive motions). Dkt. 14. No trial date is set.

## DISCUSSION

A.    Legal Standards

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also*, *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). For this reason, a district court has discretion to stay proceedings pending before it. See *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). In exercising such discretion, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. A district court should weigh the competing interests that will be affected by the requested stay, including: (1) the possible damage which may result from granting the stay; (2) the hardship or inequity which a party may suffer if the suit is allowed to go forward; and (3) the "orderly course of justice," measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc.*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-255).

In considering whether a stay of the Coverage Dispute is appropriate, the Court first considers Washington law, which governs the general liability insurance policies at issue. Those policies impose two principal duties on the insurer: the duty to defend, and the duty to indemnify. "The duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1

REPORT AND RECOMMENDATION - 5

P.3d 1167 (2000). The duty to defend is broader. "The duty to defend 'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (quoting *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999)). "Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend. If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend." *Truck Ins. Exch.*, 147 Wn.2d at 760 (citations omitted). Once the duty to defend arises, the insurer "must defend until it is clear that the claim is not covered." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 405, 229 P.3d 693 (2010).

An insurer's litigation of underlying fault while the underlying case is proceeding may expose the insurer to liability for the tort of insurance bad faith. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 919, 169 P.3d 1 (2007). "An insurer has a duty to refrain from engaging in any action which would demonstrate greater concern for its monetary interest than for the insured's financial risk." *Id*. at 8; *see also*, *State Farm Fire & Cas. Co. v. Arbor Vineyards Homeowners Ass'n*, No. CV–10–504–HU, 2011 WL 198145, at *3 (D.Or. Jan. 18, 2011) ("[A] concurrent coverage action is barred ... [when] it would force the insured to abandon its denial of liability in the underlying lawsuit or to produce evidence tending to establish such liability.").

<u>Landis Factors</u>

1.   <u>Harm That Will Occur Without a Stay</u>

The first factor to be considered under *Landis* is the harm that will occur if no stay is issued. "[I]t is improper for a court to proceed with a coverage action if doing so means finding

REPORT AND RECOMMENDATION - 6

material facts that could interfere with a parallel liability action." *Fed. Ins. Co. v. Holmes Weddle & Barcott PC*, No. C13-0926JLR, 2014 WL 358419, * 4 (W.D. Wash. Jan. 31, 2014).

One of the key issues here is whether the accident was caused by an act or omission of Elcon. Dkt. No. 9 at 11, ¶ 4.4. In the Underlying Action, the Plaintiff alleges that the accident was caused by the negligence of both PCL and Elcon. Dkt. 17, Beatty Declaration, Ex. 3 at 2, ¶¶ 1.2, 1.4; *id*. at 6, ¶ 4.2. The Charter Oak Policy provides additional insured coverage to PCL and Sound Transit if their liability is caused by the acts or omissions of Elcon. Dkt. 9 at 11, ¶ 4.3.

Charter Oak argues no stay is necessary because it has already been established in the Underlying Action that Elcon was not at fault. According to Elcon's counsel in the Underlying Action, Elcon was dismissed after "extensive discovery" because it became "clear and obvious to Plaintiff's counsel that Elcon was not liable" for Ms. Allard's death. Dkt. 20, p. 2. However, Elcon's dismissal from the Underlying Action was without prejudice. Thus, the dismissal is not a final judgment because it is not 'a formal decision or determination' 'leaving nothing further to be determined by the court.'" *Wachovia SBA Lending v. Kraft*, 138 Wn. App. 854, 861-62, 158 P.3d 1271 (2007) (citations omitted). Here, a new filing against Elcon remains possible due to its agreement with the underlying plaintiff to toll the statute of limitations. See, Dkt. 24, Declaration of Robert Radcliffe, ¶¶ 2-3.

Charter Oak argues it has been established [presumably by the dismissal without prejudice] that Elcon was not involved with traffic control at the intersection where the accident occurred and that "extensive discovery in the Underlying Lawsuit" shows that Elcon was not at fault. Dkt. 18, p. 7; *see also* Dkt. 20, Nedderman Decl. However, the dismissal appears to be the result of an undocumented agreement between Elcon's defense counsel and the underlying

REPORT AND RECOMMENDATION - 7

plaintiff. Charter Oak has also not provided the "extensive discovery" or any other evidence of the basis for the dismissal.

A dismissal without prejudice is not a decision on liability or causation. Neither does the dismissal alter the possibility that Elcon may nonetheless have been negligent in the work it performed, may have caused or contributed to the accident, or that the trier of fact in the Underlying Action may ultimately allocate fault to Elcon. *See* RCW 4.22.070(1) (in actions involving the fault of more than one entity, the trier of fact in tort cases must allocate fault among all parties and nonparties.) In addition, the Charter Oak Policy predicates coverage on whether Elcon's acts or omission caused the injury not, on whether Elcon is held liable for it. Dkt. No. 19, Exhibit 1, ¶ 1.

Charter Oak must prove the absence of coverage under the Charter Oak Policy to support its claim that it properly ceased its defense of PCL and Sound Transit after Elcon was dismissed from the Underlying Action. These are issues that must await summary judgment or trial in this case. There is a significant risk of prejudice to the insureds if this Court were to make factual determinations related to coverage prior to resolution of the Underlying Action. *See*, *e.g.*, *Or. Mut. Ins. Co. v. Ham & Rye, Ltd. Liab. Co.*, No. C10-579RJB, 2010 WL 2787852 (W.D. Wash. July 14, 2010); *Otis Elevator Co. v. EQC Operating Trust*, No. 2:20-cv-00501-RAJ-BAT, 2020 WL 6505041 (W.D. Wash. Sep. 3, 2020), *Report and Recommendation Adopted by Otis Elevator Co. v. EQC Operating Trust*, No. 2:20-cv-00501-RAJ-BAT, 2021 WL 568246, (W.D. Wash. Feb. 16, 2021) (stay recommended where property owner and property manager seeking additional insured status would have to argue that a service contractor was at fault in causing injury to a building occupant – which could be held against them in the occupant's underlying premises liability lawsuit).

REPORT AND RECOMMENDATION - 8

Charter Oak contends these cases are inapposite as they do not involve subrogation and contribution between two insurance companies for costs already incurred. Dkt. 18, p. 9. Charter Oak attempts to draw too fine a distinction. For example, *Otis* involved the same issue of whether it is appropriate for an insurer to withhold a defense and indemnification from additional insureds [here, to request reimbursement for defense costs already expended] under the liability policy of an elevator service provider, where no party contended that the elevator malfunctioned or that the plaintiff's injuries arose from the service provider's work. "In short, to establish their contractual right to coverage and indemnity in this case, [the additional insureds] will have to prove that whatever happened with the elevator can be traced to Otis's work on the elevator – a fact that could be used against them in the [underlying lawsuit] in which the plaintiff claims that the additional insureds are liable for any negligence of Otis. Dkt. 53, in Case No. 20-501-RAJ-BAT, p. 7.

In the Underlying Action, plaintiff alleges PCL is responsible for the conduct of the project and its subcontractors (including Elcon) while PCL's defense is that Ms. Allard's negligence caused her own death. But in the Coverage Dispute, Charter Oak must either lay all the blame on PCL, its additional insured, or force Zurich to litigate the culpability of Elcon, for whom PCL as the project's general contractor could be responsible.

Because proceeding with the Coverage Action will mean finding material facts that could interfere with the parties' positions in the Underlying Action, it would be improper for the parties to pursue the Coverage Action prior to resolution of the Underlying Action.

2. <u>Hardship or Inequity</u>

Charter Oak is not currently incurring defense costs for PCL or Sound Transit as Zurich appointed new defense attorneys for PCL and Sound Transit and resumed paying their defense

REPORT AND RECOMMENDATION - 9

costs no later than May 19, 2021. Dkt. 16, p. 5 n.1; Dkt. 17, Beatty Declaration, Ex. 7, 8. Thus, Zurich argues that the burden on Charter Oak resulting from a stay, if any, will be negligible.

Charter Oak contends that the insureds cannot be prejudiced if this litigation is not stayed but provides no credible evidence or analysis for that contention. Charter Oak also complains that a stay will delay its putative recovery of defense costs. However, that concern carries no weight in the stay analysis because defense costs can be recovered after the underlying action is terminated and "advancing defense costs is part of an insurer's obligation and costs of doing business." *See, e.g., Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760 (N.D. Cal. Feb. 12, 2019) at * 5.

Next, Charter Oak argues that a stay is not necessary because the Coverage Action can be resolved by "a simple negotiation between the insurers." Dkt. 18 at 11. If Charter Oak wishes to engage in such a simple negotiation, a stay will not preclude it from doing so.

Finally, Charter Oak claims that Zurich has already "determined" that Charter Oak has no duty to defend or indemnify PCL and Sound Transit because Zurich re-assumed the defense of PCL and Sound Transit. *See* Dkt. No. 17-1 at 52, 54. There is no evidence of such a determination and the Court declines to speculate on whether this was Zurich's intent. It is just as reasonable to speculate that Zurich re-assumed the defense to ensure that its insureds are protected. *See* WAC 284-30-330(6) (instructing insurers to first protect the insured and later work out any dispute regarding allocation of the loss among the insurers).

3.  Orderly Course of Justice

"This factor is measured in terms of the simplification or complication of issues, proof, and questions of law that could be expected to result from a stay." *Holmes Weddle*, 2014 WL 358419, 5 (citing CMAX, supra). In *Holmes,* the district court concluded that its task on

REPORT AND RECOMMENDATION - 10

summary judgment would clearly be simplified by a clear determination of liability in the underlying case and even if this efficiency did not materialize, a stay would still simplify questions of law and issues of proof. *Id.* at *5.

There is no question that a stay of this litigation will benefit the Court in the management of its docket as depending upon the outcome of the Underlying Lawsuit, this Coverage Dispute may no longer be necessary. In addition, a stay would avoid involving the Court in discovery disputes regarding the disclosure of privileged and/or prejudicial information relating to the parties' roles in the Underlying Action.

## CONCLUSION

After weighing the competing interests that will be affected by the requested stay, the undersigned recommends that the motion to stay be **GRANTED** and this matter **STAYED** until further order of this Court.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order.  Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 14, 2022**. The Clerk should note the matter for **April 15, 2022**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and

REPORT AND RECOMMENDATION - 11

responses shall not exceed twelve (12) pages. The failure to timely object may affect the right to appeal.

DATED this 31st day of March, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12