UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>  v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>                Defendant. | CASE NO. 2:21-cv-01344-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

      Before the Court are the cross-motions for summary judgment of Defendant Zurich American Insurance Company ("ZAIC") (Dkt. 46) and Plaintiff Charter Oak Fire Insurance Company ("Charter Oak") (Dkt. 50). This declaratory judgment and contribution action arises from the lawsuit, *Leah T. Wiiest, as Personal Representative of the Estate of Dianne Elaine Allard v. Faamavaega Tafa, et al.*, King County Superior Court no. 19-2-15791-7 SEA ("Underlying Action").

      On January 19, 2023, the parties filed a joint Motion to Bifurcate the issues of the duty to defend and the duty to indemnify, and for the filing of cross motions related solely to the duty to defend. Dkt. 37. The parties also filed a Joint Motion to stay expert and other discovery related to the duty to indemnify. Dkt. 38. On January 20, 2023, the Court granted both motions. Thus, the cross motions for summary judgment presently before the Court relate only to the duty to defend.

REPORT AND RECOMMENDATION - 1

The Court concludes that Charter Oak had a continuing duty to defend PCL and Sound Transit and therefore, recommends the District Court grant ZAIC's Motion for Partial Summary Judgment Re Duty to Defend and claim for contribution of $222,944.00 from Charter Oak (Dkt. 46) and deny Charter Oak's cross motion for summary judgment (Dkt. 50).

## BACKGROUND

The Amended Complaint in the Underlying Action alleged personal injuries and wrongful death of Dianne Allard after she was struck by a car in an intersection located within a construction zone of the Angle Lake Light Rail Station Construction Project. The Central Puget Sound Regional Transit Authority, d/b/a Sound Transit ("Sound Transit"), general contractor PCL Civil Constructors, Inc. ("PCL"), and electrical subcontractor Elcon Corporation ("Elcon") were named as defendants.

ZAIC directly insured both PCL and Sound Transit. PCL and Sound Transit were also additional insureds under the Charter Oak Policy issued to Elcon. Following the filing of the Underlying Action, ZAIC tendered the defense of PCL and Sound Transit to Charter Oak. Charter Oak agreed to defend both as additional insureds under its policy under a reservation of rights. Charter Oak reimbursed ZAIC in the amount of $89,926.20 for defense costs ZAIC had incurred to that time in the defense of PCL and Sound Transit. After Elcon was dismissed from the Underlying Action without prejudice in March 2021, Charter Oak re-tendered the defense of PCL and Sound Transit to ZAIC, who resumed the defense. On June 16, 2022, the Underlying Action was dismissed following a settlement between PCL, Sound Transit, and Ms. Allard's Estate. Charter Oak now seeks recovery of the defense costs it reimbursed to ZAIC, and ZAIC seeks recovery of the defense costs it incurred since Charter Oak withdrew its defense of PCL and Sound Transit.

REPORT AND RECOMMENDATION - 2

ZAIC's Motion for Partial Summary Judgment seeks a declaration that: (1) Charter Oak had a duty to defend PCL and Sound Transit in the Underlying Action, (2) the additional insured coverage under Charter Oak's insurance policy issued to Elcon is primary to the liability insurance issued by ZAIC to PCL and Sound Transit as named insured; and (3) ZAIC is entitled to recover from Charter Oak the amounts ZAIC incurred in defending PCL and Sound Transit. Dkt. 46. From the time ZAIC resumed the defense of PCL and Sound Transit in May 2021 until the settlement of the Underlying Action, ZAIC incurred and paid defense fees and costs totaling $222,944.00 for the defense of PCL and Sound Transit. Dkt. 48, Perron Declaration, Ex. 1.

Charter Oak's Cross Motion for Summary Judgment seeks a finding that Charter Oak is entitled to reimbursement of the $89,926.20 it previously paid to ZAIC. Dkt. 50.

## FACTS

The parties agreed to a nonexclusive set of Stipulated Facts, which are summarized here.[1] *See* Dkt. 49.

1.  On April 5, 2019, Leah T. Wiiest, as personal representative of the estate of Dianne Allard, commenced an action alleging personal injuries wrongful death captioned *Leah T. Wiiest v. Faamavaega Tafa, et al.*, King County Superior Court no. 19-2-09344-7 SEA.

2.  On June 13, 2019, Leah T. Wiiest, as personal representative of the estate of Dianne Allard, commenced an action alleging personal injuries wrongful death captioned *Leah T. Wiiest v. PCL Civil Constructors, Inc., et al.*, King County Superior Court no. 19-2-15791-7 SEA, alleging claims arising from the same incident as the first-filed action.

---

[1] In its Memorandum in Opposition to Plaintiff's Cross Motion, ZAIC submitted additional facts (to which the parties have not stipulated) to be considered as extrinsic evidence of Charter Oak's duty to defend. The Court addresses the additional facts in its analysis below.

REPORT AND RECOMMENDATION - 3

3. The King County Superior Court consolidated the actions under King County Superior Court cause number 19-2-09344-7 SEA (hereinafter the "Underlying Action.") Dkt. 49, Ex. A (Amended Complaint).

4. The Amended Complaint alleges a car struck Dianne Allard in the crosswalk while she was crossing South 188th Street at the intersection with 28th Avenue South in SeaTac, Washington, resulting in Ms. Allard's injury and subsequent death. The intersection was in a construction zone created by Sound Transit's construction of a light rail station. Dkt. 49, Ex. A. The Amended Complaint further alleges that during construction the crossing signals were deactivated. *Id.*, p. 3.

5. Sound Transit is one of the named defendants in the Underlying Action. Sound Transit was the contracting authority for a construction project known as the Angle Lake Light Rail Station (herein "Angle Lake project") that was underway in the vicinity of Ms. Allard's accident. Dkt. 49, Ex. A.

6. Defendants in the Underlying Action included PCL and Elcon. Dkt. 49, Ex. A.

7. Elcon's subcontract with PCL described its scope of work as encompassing:

    a)    Signalization includes both temporary and permanent Pedestrian and Vehicle Signals, Poles and Mast arms, Service and Controller cabinets, conductors and maintenance of existing signals during construction. All signal pole foundations, concrete equipment pads, trenching, backfill etc. and directional boring are included.

    b)    Temporary Signal work at S. 188th St. and 28th Ave. as well as S. 192nd St. & 28th Ave. is included.

    c)    Permanent Signal work at S. 188th St. and 28th Ave. as well as S. 192nd St. & 28th Ave. is included.

8. The Subcontract between PCL and Elcon is attached to the Stipulated Statement of Facts as Exhibit B. Dkt. 49, Ex. B. The Amended Complaint filed against contractors and

REPORT AND RECOMMENDATION - 4

1  subcontractors in the Underlying Action, including PCL and Elcon, alleged that all defendants "had a duty to the public to maintain a safe roadway during construction, which included maintaining functional traffic control lights not only for vehicles but also for pedestrians." Dkt. 49, Ex. A.

9. At the time of Ms. Allard's accident, general contractor PCL was the named insured on a general liability insurance policy issued by ZAIC as policy number GLO 2090773-17 ("ZAIC Policy").

10. PCL tendered defense of the Underlying Action to ZAIC as named insured on the ZAIC Policy. ZAIC accepted the tender and retained counsel to defend PCL.

11. The ZAIC Policy included a blanket additional insured endorsement providing coverage for entities that required PCL to add them as an additional insured on PCL's policy with ZAIC. Sound Transit, as owner of the light rail project, was an additional insured on the ZAIC Policy pursuant to that endorsement.

12. Sound Transit tendered defense of the Underlying Action to ZAIC pursuant to the additional insured endorsement in the ZAIC Policy. ZAIC accepted the tender and retained counsel to defend Sound Transit as an additional insured on the ZAIC Policy.

13. Subcontractor Elcon was the named insured on a general liability insurance policy issued by Charter Oak as policy number DT-CO-1G188775-COF-15 ("Charter Oak Policy"). The Charter Oak Policy included a blanket additional insured endorsement that provided coverage for entities that required Elcon to add them as an additional insured on the Charter Oak Policy. A copy of the Declarations Page of the Charter Oak Policy attached is attached as Exhibit C to the Stipulated Statement of Facts. Dkt. 49, Ex. C.

REPORT AND RECOMMENDATION - 5

14. The blanket additional insured endorsement in the Charter Oak Policy provides in part:

> WHO IS AN INSURED (Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
> a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and
>
> b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

Dkt. 49, Ex. D (Charter Oak Policy Additional Insured Endorsement).

15. The blanket additional insured endorsement in the Charter Oak Policy further provides in part:

> The insurance provided to the additional insured by this endorsement is excess over any valid and collectible "other insurance", whether primary, excess, contingent or on any other basis, that is available to the additional insured for a loss we cover under this endorsement. However, if the "written contract requiring insurance" specifically requires that this insurance apply on a primary basis or a primary and non-contributory basis, this insurance is primary to "other insurance" available to the additional insured which covers that person or organization as a named insured for such loss, and we will not share with that "other insurance."

Dkt. 49 Ex. D.

16. The Charter Oak Policy contains a form entitled Washington Changes – Defense Costs providing in part:

> If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

REPORT AND RECOMMENDATION - 6

> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

Dkt. 49, Ex. E (Charter Oak Washington Defense Cost Endorsement).

17. The term "you" in the Charter Oak Policy referred to the named insured, in this case Elcon. Dkt. 49, Ex. C.

18. The written subcontract between PCL and Elcon required Elcon to have PCL and Sound Transit added as additional insureds on Elcon's general liability insurance policy, and that such insurance be primary and non-contributory. Dkt. 49, Ex. B.

19. On August 29, 2019, ZAIC tendered defense of PCL to Elcon and its insurer, as additional insureds on the Charter Oak Policy. Dkt. 49, Ex. F (PCL Tender).

20. On January 3, 2020, Charter Oak agreed to defend PCL as an additional insured on the Charter Oak Policy, subject to a reservation of rights. Charter Oak subsequently retained counsel to defend PCL in the Underlying Action. Dkt. 49, Ex. G (Reservation of Rights Letter issued to PCL).

21. On February 12, 2020, Charter Oak issued payment to ZAIC payment in the amount of $89,926.20 as reimbursement for defense costs incurred by ZAIC in defending PCL and Sound Transit. Dkt. 49, Ex. H (Claim Note Confirming Payment).

22. On March 4, 2020, ZAIC tendered defense of Sound Transit to Charter Oak. Dkt. 49, Ex. I (Sound Transit Tender).

23. On May 19, 2020, Charter Oak agreed to defend Sound Transit as an additional insured on the Charter Oak Policy, subject to a reservation of rights. Charter Oak subsequently retained counsel to defend Sound Transit in the Underlying Action. Dkt. 49, Ex. J (Reservation of Rights Letter issued to Sound Transit).

REPORT AND RECOMMENDATION - 7

24. On May 19, 2020, Charter Oak issued a supplemental reservation of rights letter to PCL. Dkt. 49, Ex. K (Supplemental Reservation of Rights).

25. On March 26, 2021, Elcon was dismissed from the Underlying Action without prejudice. Dkt. 49, Ex. L (Order Dismissing Elcon). Elcon executed a tolling agreement to allow the plaintiffs to re-file their claim against Elcon. Dkt. 47, Radcliffe Declaration, Ex. 2. Plaintiffs did not re-file their claims against Elcon and later settled and dismissed the Underlying Action with prejudice. Dkt. 49, Ex. N.

26. On April 12, 2021, Charter Oak re-tendered the defense of PCL and Sound Transit to ZAIC, based on the dismissal of Charter Oak's named insured Elcon and ZAIC's role as insurer for PCL and Sound Transit (the latter as additional insured on the ZAIC Policy). Dkt. 49, Ex. M (Charter Oak's Re-Tender).

27. On April 29, 2021, ZAIC resumed the defense of PCL and Sound Transit in the Underlying Action.

28. On June 16, 2022, the Underlying Action was dismissed following a settlement between PCL, Sound Transit, and the Estate of Dianne Allard. All claims against PCL and Sound Transit were dismissed with prejudice. Dkt. 49, Ex. N (Dismissal of the Underlying Action).

29. ZAIC contributed to the settlement of the Underlying Action pursuant to the ZAIC Policy.

## LEGAL STANDARDS

A. Summary Judgment Standard

Summary judgment is appropriate when the moving party shows there is no genuine issue as to any material fact. Fed. R. Civ. P. 56. Once the movant has submitted its evidence, the burden shifts to the party opposing the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

REPORT AND RECOMMENDATION - 8

1  (1986). The opposing party must set forth specific facts to demonstrate that a genuine issue of
2  material fact exists. Fed. R. Civ. P. 56 (c), (e); *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253,
3  1255-56 (9th Cir. 2008). Unsupported self-serving allegations, legal arguments, and conclusory
4  statements in a memorandum of authorities are insufficient to demonstrate such an issue. *Nelson*
5  *v. Pima Cmty, Coll.*, 83 F.3d 1075 (1996). If the opposing party fails to controvert pertinent facts
6  supporting the motion, those facts are deemed to have been proven. *Jones v. Halekulani Hotel*,
7  557 F.2d 1308, 1310 (9th Cir. 1977).

8  "[W]hen simultaneous cross-motions for summary judgment on the same claim are
9  before the court, the court must consider the appropriate evidentiary material identified and
10 submitted in support of both motions, and in opposition to both motions, before ruling on each of
11 them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting
12 *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir.
13 2001)).

14 B.      Interpretation of Insurance Contracts

15      "In Washington, insurance policies are construed as contracts. An insurance policy is
16 construed as a whole, with the policy being given a fair, reasonable, and sensible construction as
17 would be given to the contract by the average person purchasing insurance." *Weyerhaeuser Co.*
18 *v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115, 122 (2000) (internal quotations
19 omitted); *Overton v. Consol. Ins. Co.*, 145 Wash.2d 417, 38 P.3d 322, 325 (2002)
20 ("Interpretation of insurance policies is a question of law, in which the policy is construed as a
21 whole, and each clause is given force and effect."). Ambiguities are resolved against the drafter-
22 insurer and in favor of the insured. *Weyerhaeuser Co.*, 15 P.3d at 122. "A clause is ambiguous
23 when, on its face, it is fairly susceptible to two different interpretations, both of which are

reasonable." *Id*. (quoting *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co*., 134 Wash.2d 413, 951 P.2d 250, 256 (1998)). However, if the language of the policy is clear and unambiguous, the court must enforce the policy as it is written and may not modify the policy or create ambiguity where none exists. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co*., 124 Wash.2d 789, 881 P.2d 1020, 1025 (1994); *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wash.2d 274, 313 P.3d 395, 400 (2013) ("A court ... may not interpret a policy in such a way that it creates nonexistent ambiguities that result in the policy being construed in favor of the insured.").

C. <u>Duty to Defend and Duty to Indemnify</u>

Under Washington law, which governs the general liability insurance policies at issue, insurers owe a duty to defend and a duty to indemnify. "The duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden v. Mut. of Enumclaw Ins. Co*., 141 Wn.2d 55, 64, 1 P.3d 1167 (2000). The duty to defend is broader. While the duty to defend arises if the insurance policy *conceivably covers* claims made against the insured, the duty to indemnity is based on an insured's actual liability. *Am. Best Food, Inc. v. Alea London, Ltd*., 168 Wn.2d 398, 404, 229 P.3d 693 (2010).

"The duty to defend 'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (quoting *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999)). "Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend. If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend." *Truck Ins. Exch*., 147 Wn.2d at 760 (citations omitted). Once the duty to defend

REPORT AND RECOMMENDATION - 10

1 arises, the insurer "must defend until it is clear that the claim is not covered." *Am. Best Food,*
2 168 Wn.2d at 404.

3 An insurer may not invoke an equivocal interpretation of the law or the policy to relieve
4 itself of the duty to defend. *Woo v. Fireman's Fund Ins. Co.*, 150 Wash.App. 158, 208 P.3d 557,
5 564 (2009). "Although this duty to defend is broad, it is not triggered by claims that clearly fall
6 outside the policy." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wash.2d 872, 297 P.3d 688, 691
7 (2013) (citing *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 951 P.2d 1124, 1126 (1998)). If the
8 insurer remains uncertain about its duty to defend, the insurer must provide a defense under a
9 reservation of rights while seeking a declaratory judgment that it has no duty to defend. *Truck*
10 *Ins. Exch.*, 58 P.3d at 282. Because duty to defend cases typically turn on purely legal questions
11 of interpretation of insurance contracts and complaints, "they are routinely resolved at the
12 summary judgment stage." *Evanston*, 158 F. Supp. 3d at 1114.

## MOTION TO STRIKE

14 In addition to the parties' Stipulated Facts, ZAIC offers additional facts supported by
15 declarations and exhibits, which were submitted in opposition to summary judgment in the
16 Underlying Action. Dkt. 47, Ex. 1. ZAIC offers the facts as extrinsic evidence of Charter Oak's
17 duty to defend. *See Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803-04, 329 P.3d 59
18 (2014) (extrinsic evidence may be used to establish a duty to defend but not to contest that duty).

19 Charter Oak moves to strike the Declaration of Robert Radcliffe and attached
20 declarations (Declaration of T. Jeffrey Keane, including exhibits A, B, C, D, and I (the
21 Declarations of Timothy Moebes, Gary A. Norris, and Joellen Gill)). Dkt. 47, Radcliffe Decl.,
22 Ex. 1. Charter Oak argues the declarations are inadmissible hearsay and ZAIC's counsel lacks
23 the requisite foundation to offer them. Dkt. 53, pp. 2-3. However, hearsay evidence may be

REPORT AND RECOMMENDATION - 11

considered at the summary judgment phase so long as it could be presented in an admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). The Court may take judicial notice of the pleadings filed in this and in the Underlying Action but does not take judicial notice of disputed facts within the pleadings. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). The motion to strike is denied.

## DISCUSSION

A. <u>Charter Oak's Continuing Duty to Defend</u>

Washington courts have determined what evidence a court may consider when evaluating whether an insurer has a duty to defend. The general rule is that the duty to defend must be determined based solely on the allegations of the complaint and the language of the insurance policy – sometimes described as "the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014). There are two exceptions to the "eight corner" rule, both of which favor the insured. *Expedia*, 180 Wn.2d at 803. First, if coverage is possible but is not clear from the face of the complaint, the insurer must investigate and give the insured the benefit of any doubt about the duty to defend. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53, 164 P.3d 454 (2007). Second, "if the allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous, facts outside the complaint may be considered. However, these extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty." *Expedia*, 180 Wn.2d at 803-04 (citations omitted). "The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty." *Woo*, 161 Wn.2d at 54.

REPORT AND RECOMMENDATION - 12

1    On the one hand, Charter Oak acknowledges its duty to defend was triggered as
2 evidenced by the fact it took over the defense of PCL and Sound Transit and reimbursed ZAIC
3 for defense costs incurred at that time of $89,926.20. On the other hand, Charter Oak argues it is
4 entitled to a return of that reimbursement because "the complaint should never have been
5 tendered because it was clear that Charter Oak's named insured, Elcon, did not cause or
6 contribute to Ms. Allard's injuries." Charter Oak confuses its duty to defend with the duty to
7 indemnify.
8    The duty to defend arises at the time the Underlying Action is filed. The Amended
9 Complaint in the Underlying Action alleged that all the defendants "had a duty to the public to
10 maintain a safe roadway during construction, which included maintaining functional traffic
11 control lights not only for vehicles but also for pedestrians." Dkt. 49, Ex. A. Elcon was
12 contractually responsible for "signalization of temporary and permanent pedestrian and vehicle
13 signals." At the time of Ms. Allard's accident, the pedestrian signals and crosswalk lights were
14 not all operational. Under the terms of the Charter Oak policy, additional insureds are covered if
15 bodily or personal injury was caused by Elcon in the performance of its work. Dkt. 49 at 51.
16 Under these facts, there is the possibility that Elcon contributed to Ms. Allard's injuries and
17 death. Although Charter Oak argues Elcon was not responsible for controlling pedestrian traffic
18 or closing the crosswalks, the duty to defend is based on "*the potential for liability.*" *Woo*, 161
19 Wash.2d at 52 (quoting *Truck Ins.*, 147 Wash.2d at 760) (emphasis added in *Woo*). Here, the
20 potential for liability existed because the Amended Complaint alleged the defendants failed to
21 maintain functional pedestrian and vehicle traffic control lights.
22    Charter Oak properly assumed the defense of PCL and Sound Transit under a reservation
23 of rights. Dkt. 49, Exs. J and K. The issue here is whether Charter Oak was relieved of its duty to

REPORT AND RECOMMENDATION - 13

defend when Elcon was dismissed without prejudice (with a tolling agreement) from the Underlying Action and whether the dismissal is dispositive of whether the claims alleged were "clearly not covered by the policy." *Woo*, 161 Wash.2d at 53, 164 P.3d 454 (quoting *Truck Ins. Exch.*, 147 Wash.2d at 760, 58 P.3d 276) ("[A]n insurer is not relieved of its duty unless the claim alleged is clearly not covered by the policy).

Although a defendant may no longer have a claim pending against it upon dismissal, a dismissal without prejudice does not materially alter the legal relationship of the parties, because the defendant remains subject to the risk of re-filing. *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir.2008); *Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir.2009). Here, Elcon was dismissed from the Underlying Action subject to a tolling agreement so Plaintiff could refile a claim against Elcon if it later determined Elcon was liable for Ms. Allard's injuries. Dkt. 49, Ex. N. Elcon remained subject to the risk of re-filing until Plaintiff dismissed the Underlying Action with prejudice. Dkt 49, Ex. N.

Washington law is clear that once a duty to defend attaches, a liability insurer may not unilaterally withdraw the defense. "Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination." *Am. Best Food*, 168 Wn.2d at 405. The dismissal without prejudice did not apply to PCL or Sound Transit and they remained in the case. To determine Charter Oak's continuing duty to defend PCL and Sound Transit, it remained necessary to look to the language of the Amended Complaint and the Charter Oak policy, neither of which changed after the dismissal of Elcon. And, in relying on the dismissal without prejudice to withdraw its defense, Charter Oak contravened the rule that extrinsic evidence may not be used by insurers to contest their duty to defend. *See*, *e.g.*, *Expedia*, 180 Wn.2d at 803-804.

REPORT AND RECOMMENDATION - 14

The Charter Oak policy does not predicate coverage on whether Elcon is *actually* held liable but on whether Elcon, through the performance of its work, caused or contributed to causing the accident. *See*, *Peterson v. Discover Prop. & Cas. Ins. Co*., 460 S.W.3d 393, 405-07 (Mo. Ct. App. 2015) (for purpose of additional insured coverage, underlying injury was caused by named insured's acts or omissions even though jury found named insured not negligent). Additional insured coverage is based on causation. Extrinsic evidence in the form of expert witness declarations filed in the Underlying Action illustrate Charter Oak's continuing duty to defend PLC and Sound Transit. As previously noted, Elcon was responsible for maintaining the existing and permanent pedestrian and vehicle signalization at the intersection where the accident occurred. At the time of the accident, Elcon had installed the crosswalk signals but some were not yet operational. Elcon placed cardboard placards bearing a "smiley face" on the inoperable traffic lights. Dkt. 47 at 13, 35, 36, 37.

Engineer Timothy A. Moebes noted that, at the time of the accident, there were no signs of any kind to inform Ms. Allard that the crosswalk was closed; the Elcon contractor representative testified that the crosswalk was 'open' from time to time; no effort had been made to scrub or obliterate the painted crosswalk; and there were no barricades blocking pedestrian access to the sidewalk. Dkt. 47, Ex. A, pp. 12-13. Mr. Moebes also noted that, while the pedestrian signals had been installed at all four corners of the intersection, the signals on the side of the crosswalk where Ms. Allard was crossing had not been activated and had 'happy face' placards placed in the signal head. *Id.* Thus, there was nothing to inform drivers that the pedestrian signals were inoperative and from their presence and absence of signage indicating they were inoperative, it was reasonable to assume that drivers expected the pedestrian signals to be operative. *Id.* More importantly, since there were no operable pedestrian lights on the date of

the accident, it is assumed Ms. Allard would have had to rely on the traffic signals for the northbound cars to determine when she could safely cross the street. However, the light cycle she would have had to rely on was simply too short to allow her to cross the street safely before the light for the westbound traffic turned green. *Id.*, p. 14.

Mr. Moebes concluded the accident occurred because Ms. Allard was never informed the crosswalk was 'closed,' she most probably had used the same crosswalk on her short walk to the store without incident, upon her return she relied upon the vehicle traffic signals since that was the only available information to her and, deprived of the knowledge that the light sequence was much too short to allow her to fully cross the street, she was never aware the light changed during her travel. Dkt. 47, Ex. A, pp. 19-20.

Gary A. Norris, a senior engineer and project manager for DN Traffic Consultants, opined "[n]othing informed motorists or pedestrians (or, for that matter, contractor Elcon) that the crosswalk was closed." Dkt. 47, Ex. B at p. 49. Although the traffic control plan called for the crosswalk to be closed throughout the project, it was not and there were no barricades, no attempt to obliterate the crosswalk striping, and no warning signs. In fact, Elcon's representative testified that the sidewalk was open and sometimes closed during construction. *Id.*, p. 47. Norris also stated the "placement of 'happy face' placards does not tell the pedestrian anything and most certainly does not inform pedestrians that use of the crosswalk is prohibited" and the existence of pedestrian signals at the four corners of the intersection (where one was functioning, but others had 'happy face' placards in the signal heads) "would undoubtedly confuse a pedestrian." *Id.*, p. 51.

Mr. Norris concluded the traffic control plan was defective because it failed to specify signage, warnings, or barricades to effectively close the crosswalk; the non-operable pedestrian

REPORT AND RECOMMENDATION - 16

signals with the 'happy face' inserts lent confusion where there was no clear and uniform messaging; and the traffic signals should have reverted to flashing red or amber lights to accommodate the non-operable pedestrian signals because drivers would have no way of knowing that the pedestrian signals were not operating. *Id.*

Human factors engineer Joellen Gill noted there was nothing to alert Ms. Allard that she was encountering a hazard; "indeed, the typical appearance of a large painted crosswalk invited usage." Dkt. 47, Ex. C, p. 65. As to the placement of 'happy face' placards to indicate the lights were inoperable, Ms. Gill noted any argument this should have made a user aware the crosswalk was closed ignores the fact no competent warning of any kind was given that the crosswalk was in fact, closed. Dkt. 47, Ex. C, p. 66. According to Ms. Gill, the failure to provide any warning against using the supposedly closed crosswalk was significant because the visual cues invited pedestrians to use the crosswalk – paint surface of the crosswalk was in good condition and the presence of signal heads, even if not operable, suggested the crosswalk was operable; the nearby construction did not impede a pedestrian's use of the crosswalk, and even the barrel and taping used to protect the recently poured ADA ramps, left access to the crosswalk. *Id.* Ms. Gill also noted "one need look no further than the testimony [of Elcon's representative that the crosswalk was 'open' during construction] to illustrate how poorly the defendants provided information to users about the closed status of the crosswalk ----including their own contractors." *Id.*, p. 67.

Charter Oak argues Elcon was not responsible for activating signals, controlling pedestrian traffic, or shutting down the crosswalk. However, expert testimony points to Elcon's use of happy face placards – which are undisputedly not standard traffic control devices – as having contributed to a dangerous condition where drivers and pedestrians alike would have been confused as to whether the crosswalk was open and whether the crosswalk and traffic

REPORT AND RECOMMENDATION - 17

control devices were working properly. It can certainly be argued that had PCL or Sound Transit closed the crosswalk and posted signage to prohibit pedestrian use of the crosswalk, pedestrians might not have been confused by the traffic control devices. However, PCL and/or Sound Transit's actions or failure to act does not negate that Elcon's work on the traffic control devices may have contributed to a dangerously ambiguous environment for pedestrians which may have contributed to Ms. Allard's injuries and death.

"Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination." *Canal Indemnity*, 737 F.Supp.2d at 1303. The dismissal without prejudice of Elcon was not a decision on liability or causation. Neither does the dismissal alter the possibility that Elcon may nonetheless have been negligent in the work it performed, may have caused or contributed to the accident, or that the trier of fact in the Underlying Action may have ultimately allocated fault to Elcon. *See* RCW 4.22.070(1) (in actions involving the fault of more than one entity, the trier of fact in tort cases must allocate fault among all parties and nonparties.) Additionally, the Charter Oak Policy predicates coverage on whether Elcon's acts or omission caused the injury not, on whether Elcon is held liable for it.

The Court concludes Charter Oak's duty to defend continued throughout the Underlying Action and therefore, Charter Oak is not entitled to contribution for the defense costs it incurred when it was properly providing a defense to PCL and Sound Transit.

B.   ZAIC's Counterclaim

ZAIC has alleged a counterclaim against Charter Oak for contribution, seeking recovery of defense costs paid by ZAIC for the defense of PCL and Sound Transit in the Underlying Action. Dkt. 31, pp. 7-11. Contribution among insurers is recognized in Washington when an

insurer pays amounts on behalf of an insured that should be borne by other insurers. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 419-20, 191 P.3d 866 (2008).

The written subcontract between PCL and Elcon required Elcon to have PCL and Sound Transit added as additional insureds on Elcon's general liability insurance policy, and that such insurance be primary and non-contributory. Dkt. 49, Stipulation, Ex. B (Uniform Special Conditions to Subcontract para. 13.3, 13.5). The additional insured endorsement in the Charter Oak policy provides that when its named insured is subject to such a contractual requirement, the additional insured coverage provided by Charter Oak in fact shall be primary and noncontributory. *Id.*, Stipulation, Ex. D, para. 3. Thus, Charter Oak is required to reimburse ZAIC for the defense costs that ZAIC incurred in defending PCL and Sound Transit.

Because Charter Oak had a continuing duty to defend PCL and Sound Transit in the Underlying Action, ZAIC is entitled to contribution from Charter Oak for amounts incurred and paid by ZAIC for the defense of PCL and Sound Transit after Charter Oak withdrew its defense, in the amount of $222,944.00.

## CONCLUSION

For the reasons set forth above, the Court recommends Defendant ZAIC's Motion for Partial Summary Judgment re Duty to Defend (Dkt. 46) be **denied**; Plaintiff Charter Oak's Cross Motion for Summary Judgment (Dkt. 50) summary judgment be **granted**.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 4, 2023**. The Clerk should note the matter for **August 7, 2023**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve (12) pages. The failure to timely object may affect the right to appeal.

DATED this 20th day of July, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge